PEOPLE v KNOTT

1. Homicide—Manslaughter—Self-Defense—Evidence—Specific Acts—Unrelated Acts—Admissibility.

Specific acts of violence committed by the deceased upon third persons, which are in no way connected with nor observed by the accused, are inadmissible in a trial for manslaughter where the defendant asserts self-defense.

2. Homicide—Manslaughter—Self-Defense—Evidence—Reputation Evidence—Admissibility.

Evidence of the violent character of a deceased in a trial for manslaughter where the defense of self-defense is asserted is limited to reputation evidence where there is no showing that the defendant knew of prior acts of violence of the deceased or that any of such acts were directly connected with the homicide.

3. Homicide—Manslaughter—Evidence—Witnesses—Preserving Question—Attempt to Call—Separate Record.

A claim that in a trial for manslaughter wherein defendant asserted self-defense a court improperly rejected the offered testimony of witnesses who allegedly saw the deceased with a gun the night before he was killed by the defendant is not

References for Points in Headnotes
[1] 40 Am Jur 2d, Homicide § 144.
[2] 40 Am Jur 2d, Homicide §§ 301–309.
Admissibility of evidence as to other's character or reputation for turbulence on question of self-defense by one charged with assault or homicide. 1 ALR3d 571.
[3] 40 Am Jur 2d, Homicide § 559.
[4] 40 Am Jur 2d, Homicide § 265.
[5] 75 Am Jur 2d, Trial § 876.
[6] 46 Am Jur 2d, Judges § 21 *et seq.*
63 Am Jur 2d, Prosecuting Attorneys §§ 22–29.
[7] 75 Am Jur 2d, Trial § 643.
[8] 40 Am Jur 2d, Homicide § 55.
[9] 40 Am Jur 2d, Homicide § 56 *et seq.*
[10] 40 Am Jur 2d, Homicide § 70.
[11, 12] 40 Am Jur 2d, Homicide §§ 525, 528–530, 533–535.

preserved for appeal where defense counsel neither called the witnesses at trial nor made a separate record of their testimony.

4. CRIMINAL LAW—HOMICIDE—MANSLAUGHTER—INCLUDED OFFENSES—RECKLESS USE OF FIREARMS—NECESSARY ELEMENTS.

Reckless use of a firearm is not a lesser included offense of manslaughter or murder since a firearm is not a necessary element of either; for an offense to be lesser included of another it must contain some, but not all, of the elements of the higher offense and there must be no additional elements in the included offense which are not part of the higher offense.

5. CRIMINAL LAW—INSTRUCTIONS TO JURY—INCLUDED OFFENSES—SEMANTIC TEST—FACTUAL TEST.

A trial judge must first determine whether a requested charge on a lesser included offense falls within the strict semantic test of an included offense before he then moves to the factual question of whether in the circumstances of the case such a charge is warranted.

6. CRIMINAL LAW—JUDGES—PROSECUTORS—SEPARATION OF FUNCTIONS—CHARGING OF DEFENDANT.

The judiciary may not properly exercise the function of prosecutors by determining what charges will be brought against a defendant.

7. CRIMINAL LAW—MANSLAUGHTER—INCLUDED OFFENSES—DEFENSES—THEORIES OF DEFENSE—RECKLESS USE OF FIREARMS—INSTRUCTIONS TO JURY.

A defendant is entitled to have the jury charged on his theories of defense, but he is not entitled to determine the charge which will be brought against him.

8. HOMICIDE—MANSLAUGHTER—VOLUNTARY MANSLAUGHTER—INVOLUNTARY MANSLAUGHTER—STATUTES—SENTENCES.

The courts in developing a definition of manslaughter at common law have recognized two degrees, voluntary and involuntary, although the statute does not recognize such grades or degrees; voluntary manslaughter suggests a greater degree of culpability, and both degrees permit imposition of the same sentence under the statute.

9. HOMICIDE—MANSLAUGHTER—VOLUNTARY MANSLAUGHTER—DEFINITION—KILLING—INFLUENCE OF PASSION—HEAT OF BLOOD—REASONABLE PROVOCATION—TIME—TEMPORARY EXCITEMENT—WICKEDNESS OF HEART—RECKLESSNESS OF DISPOSITION.

Voluntary manslaughter is the act of killing a human being

which, though intentional, is committed under the influence of passion or in the heat of blood produced by an adequate or reasonable provocation, and before a reasonable time has elapsed for the blood to cool and reason to resume its habitual control, and is the result of the temporary excitement, by which the control of reason was disturbed, rather than of any wickedness of heart or cruelty or recklessness of disposition.

10. HOMICIDE—MANSLAUGHTEREINVOLUNTARY MANSLAUGHTER—DEFI-
    NITION—KILLING—MALICE—INTENT—UNLAWFUL ACT—FELO-
    NIES—NEGLIGENCE—NEGLIGENT OMISSION.

Involuntary manslaughter is the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty.

11. HOMICIDE—MANSLAUGHTER—MURDER—INSTRUCTIONS TO JURY—
    DIFFERENTIATING DEGREES.

It is necessary to differentiate the definitions of voluntary and involuntary manslaughter to properly present to a jury the different degrees of homicide when it has a choice between murder and manslaughter, but that critical choice is not present when the charge is manslaughter.

12. HOMICIDE—MANSLAUGHTER—VOLUNTARY MANSLAUGHTER—INVOL-
    UNTARY MANSLAUGHTER—INSTRUCTIONS TO JURY—MANIFEST IN-
    JUSTICE.

Failure of a court to give a charge differentiating voluntary from involuntary manslaughter is not so manifestly unjust as to require reversal where the statute provides for but one degree of manslaughter and permits the same punishment for either, and the charge as given did not omit any legally essential ingredient, and was not erroneous or misleading.

Appeal from Calhoun, Creighton R. Coleman, J. Submitted Division 1 January 13, 1975, at Grand Rapids. (Docket No. 19475.) Decided February 24, 1975.

Richard Knott was convicted of manslaughter. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.*

*Derengoski,* Solicitor General, and *Stanley Everett,* Prosecuting Attorney, for the people.

*Jessica R. Cooper,* Assistant State Appellate Defender, for defendant.

Before: ALLEN, P. J., and N. J. KAUFMAN and O'HARA,* JJ.

N. J. KAUFMAN, J. Defendant, Richard Knott, was convicted by a jury of manslaughter, MCLA 750.321; MSA 28.553. He appeals his conviction as of right.

On March 24, 1971 during an industrial strike, defendant shot one of his co-employees, Robert Hampton. Defendant admitted killing Hampton, but claimed he shot in self-defense. Defendant raises four claims of error which will be discussed *seriatim.*

## I.

Defendant's first claim of error is that the trial court refused to admit testimony regarding the character, reputation, and specific violent acts of the deceased.

The issue first arose when defense counsel was cross-examining a police officer. He attempted to elicit evidence of a brick-throwing incident in which deceased had been involved the day before this shooting. On objection by the prosecutor, the trial court properly ruled that before any evidence regarding deceased's violent nature could be introduced, defendant must lay a foundation by adducing some evidence that defendant acted in self-defense. *People v Cellura,* 288 Mich 54; 284 NW

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

643 (1939). He reserved to defendant the right to recall the witness after such proof was presented, but defense counsel did not recall the witness and there is no claim of error as to this particular piece of evidence.

After the prosecution rested and before defendant commenced his proofs, the trial judge and counsel had a discussion in chambers regarding what evidence defendant would be permitted to present. After this informal discussion, defense counsel went on record to set forth the evidence he hoped to produce. The evidence consisted of: a circuit court docket record indicating the deceased had been convicted of carrying a concealed weapon (CCW) a year and a half before this incident and was still on probation at the time of his death; Albion City Police Department records to present whatever evidence they had of specific acts on the part of the deceased; and, finally, two witnesses who purportedly would testify they had been present at a home the evening before this shooting when the deceased came to that home with a gun looking for defendant.

After objection by the prosecutor, the court made the following ruling:

"Well, I am going to rule that the defendant cannot show prior individual acts of the victim which were not known to him personally and that he cannot show acts of which he had no knowledge, and I do rely on *People v Farrell,* 137 Mich 127; [100 NW 264 (1904)]; and *People v Dowd,* 127 Mich 140; [86 NW 546 (1901)], *People v Kirk,* 151 Mich 253; [114 NW 1023 (1908)]. I believe that the concealed weapon act is remote and raises a collateral issue which we would get into to determine the facts of that situation; and I don't have any facts before me about the Albion City Police records. I can't really rule on that. I don't know if there is anything. Nothing has been produced * * * ."

The trial court's refusal to allow evidence of the conviction of the CCW charge was not an abuse of discretion, even if we assume, *arguendo,* that defendant was aware of this conviction. The Court in *People v Farrell,* 137 Mich 127, 130; 100 NW 264 (1904), cited by the trial judge, stated:

"But it is well settled that it is not admissible to show specific acts of violence committed by deceased upon third persons, in no wise connected with nor observed by the accused * * * ."

This is true whether the purpose of the proposed evidence is to show the state of mind of the defendant, or to prove who was the aggressor. *People v Cellura, supra, People v Rapier,* 43 Mich App 297; 204 NW2d 339 (1972).

The trial court's finding that the CCW charge was too remote to be admitted is supported by *People v Cellura, supra,* at 64:

" * * * evidence of particular acts of violence or lawlessness is not admissible unless they were directly connected with and involved in the homicide."

It is not clear from the transcript whether the arrest record defendant proposed to introduce would have, in fact, revealed any other prior or unlawful acts by the deceased. In any event, the record was properly excluded under the same authority cited for the rejection of the CCW conviction. We note that a defendant is not precluded from introducing all evidence of the deceased's violent character, but the courts have seen fit to limit that showing to reputation evidence, where there is no showing that the defendant knew of the prior acts or that any act was directly con-

nected with the homicide. *People v Stallworth,* 364 Mich 528; 111 NW2d 742 (1961).

It is unclear what ruling the judge made with regard to the two witnesses defense counsel proposed to call who could testify to seeing the deceased with a gun the night before this incident. At one point in the argument the court referred to one of the witnesses defense counsel mentioned, and stated, "I was not aware of the Thomas Watts statement that you just mentioned". He later made the ruling already quoted, without mentioning this offer of proof. That ruling does not appear to reject such offer of proof. Yet, defense counsel neither called the witnesses at trial, nor made a separate record of their testimony. It is therefore not necessary for this Court to determine whether that testimony should have been allowed as relevant evidence of violent acts directly connected with or involved in the homicide. *People v Cellura, supra.* Defense counsel, having failed to introduce the testimony or make a separate record, did not preserve that argument for appeal. *People v Eddington,* 387 Mich 551, 556; 198 NW2d 297, 303 (1972), *People v Reynold,* 20 Mich App 397; 174 NW2d 25 (1969).

## II.

The defendant further cites error in the trial court's refusal to give an instruction, as requested by defense counsel, on reckless use of a firearm. MCLA 752.861; MSA 28.436(21). Defendant accurately quotes the test used by our Court to determine whether an offense is "lesser included" of another offense:

"For an offense to be lesser included it must contain some, but not all of the elements of the higher offense

and there must be no additional elements in the 'included' offense which are not part of the 'higher' offense." *Genesee Prosecutor v Genesee Circuit Judge,* 386 Mich 672, 684; 194 NW2d 693, 699 (1972).

See also, *People v Ora Jones,* 45 Mich App 373; 206 NW2d 453 (1973), *lv granted,* 390 Mich 793 (1973).

As the Court pointed out in *Jones, supra,* reckless use of a firearm requires that a firearm be proved as an element of the crime. A firearm is not a necessary element of the crime of murder or manslaughter, although it is often the tool used, as is the case here. Reckless use of a firearm, therefore, is not a lesser included offense of manslaughter.

Defendant argues that while the test used is effective as a guide to prosecutors, when employed by our courts to limit instructions on included offenses, it exalts form over substance. Defendant cites several cases in which courts appear to employ a factual test rather than the semantic test used in Michigan. Defendant fails to note, however, that the factual test is the second step in any determination of included offenses. A trial judge must first determine whether the charge requested falls within the strict rule cited, and, if the answer is affirmative, he must then move to the factual question of whether, in the circumstances of the particular case, such a charge is warranted. If the first cannot be answered in the affirmative, there is no necessity to reach the second factual determination. *People v Carter,* 387 Mich 397; 197 NW2d 57 (1972).

If the rule were otherwise, judges would be acting as prosecutors in every case, determining what charges will be brought against the defendant. The judiciary may not properly exercise that

function. *Genesee Prosecutor v Genesee Circuit Judge, supra.* In this case, the prosecutor could have chosen to charge defendant with reckless use of a firearm. Instead, he chose to charge manslaughter. The former is not lesser included of the latter, and the trial judge had no authority, over a prosecutor's objection, to make such a charge.

Defendant further argues that the charge should have been given as part of defendant's theory of the case. Defendant misreads the authority cited. A defendant is entitled to a charge on his theories of *defense, People v Hoefle,* 276 Mich 428; 267 NW 644 (1936). He is not entitled to determine the charge which will be brought against him. Reckless use of a firearm is not a defense to manslaughter. The charge requested by defendant was properly refused by the trial court.

### III.

Defendant's next claim of error challenges the sufficiency of the instruction on manslaughter and the court's failure to distinguish voluntary and involuntary manslaughter. Defendant asserts that the instruction denied defendant his right to a determination by a properly instructed jury of defendant's degree of criminal culpability.

In charges of involuntary manslaughter the practice is to set up in the information the particular facts upon which the charge rests. *People v Ryczek,* 224 Mich 106; 194 NW 609 (1923), *People v Olmstead,* 30 Mich 431 (1874). The defendant in this case was charged in the information with manslaughter. No particular facts were defined, and it is clear that the charge against this defendant was voluntary manslaughter. The jury's verdict of guilty as charged, therefore, was a verdict of guilty of voluntary manslaughter.

The difficulty in this case arises from a review of the trial court's general instruction to the jury on manslaughter. The trial court charged the jury:

" 'Any person who shall commit the crime of manslaughter shall be guilty * * * and so forth.'
"Manslaughter is defined as the unlawful killing of another without malice, express or implied. The offense is one that may be committed without premeditation. It is not necessary to find premeditation to find the defendant guilty of manslaughter. If you find beyond a reasonable doubt, after careful consideration of all evidence, that the defendant is guilty of the crime of manslaughter and was not acting in self-defense, then it will be your duty to find the defendant guilty of manslaughter."

Defense counsel did not object to this instruction.

This charge could embrace a broad definition of both voluntary and involuntary manslaughter. Michigan's statute does not recognize grades or degrees of manslaughter nor does it provide a definition. MCLA 750.321; MSA 28.553, *People v Rogulski,* 181 Mich 481; 148 NW 189 (1914). In developing a definition at common law, the courts have recognized two degrees, voluntary and involuntary; the former suggesting a greater degree of culpability, but both permitting the imposition of the sentence set out in the statute. The Supreme Court in *People v Townes,* 391 Mich 578; 218 NW2d 136 (1974), has recently cited with approval the following definitions of voluntary and involuntary manslaughter:

" 'But if the act of killing, though intentional, be committed under the influence of passion or in heat of blood, produced by an adequate or reasonable provocation, and before a reasonable time has elapsed for the blood to cool and reason to resume its habitual control,

and is the result of the temporary excitement, by which the control of reason was disturbed, rather than of any wickedness of heart or cruelty or recklessness of disposition; then the law, out of indulgence to the frailty of human nature, or rather, in recognition of the laws upon which human nature is constituted, very properly regards the offense as of a less heinous character than murder, and gives it the designation of manslaughter.' "

\* \* \*

" ' "Involuntary manslaughter is the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty." ' " 391 Mich at 589–590; 218 NW2d at 140–141.

The Court in *Townes* did not pronounce that these would be the only acceptable charges in homicide cases in which manslaughter is a possible verdict, but it did conclude that differentiating definitions of voluntary and involuntary manslaughter are necessary to properly present to a jury the different degrees of homicide "so that they may have a clear and correct understanding of what it is they are to decide". *Townes, supra,* at 587. As was the case in *Townes,* the distinction becomes particularly critical when the jury has a choice between murder and manslaughter. That critical choice was not present in the case at bar.

The primary defense in this case was self-defense. Self-defense negates voluntary manslaughter, not involuntary manslaughter. Defendant claims in his brief that because accident was an alternative theory, he was entitled to an involuntary manslaughter charge. It is obvious from a reading of the record that if defendant intended to present accident as a theory of defense at the commencement of the trial, he had abandoned

that theory by the close of proofs and defense counsel relied solely on self-defense in his closing argument. This is a strong indication that defense counsel purposely did not request an involuntary manslaughter charge.

We agree that the charge given in this case is not particularly elucidating, but we cannot say that it omits a legally essential ingredient, *People v Prinz,* 148 Mich 307; 111 NW 739 (1907), *People v Hearn,* 354 Mich 468; 93 NW2d 302 (1958), or that it is erroneous or misleading, *People v Mac-Pherson,* 323 Mich 438; 35 NW2d 376 (1949), *People v Oberstaedt,* 372 Mich 521; 127 NW2d 354 (1964). We agree that had defendant produced evidence of accident as an alternative theory he could have asked for and received a charge distinguishing voluntary and involuntary manslaughter. However, where our statute provides for but one degree of manslaughter, and permits the same punishment for a conviction of voluntary and involuntary manslaughter, we cannot say that the failure to give a charge differentiating the two offenses was so manifestly unjust as to require reversal in this Court where no objection was made at trial. *People v Townes, supra, People v Kelly,* 51 Mich App 28; 214 NW2d 334 (1973).

## IV.

Defendant's final claim of error objects to the Allen-type[1] charge given to the jury before they retired to deliberate. We have reviewed the charge in light of the recent case of *People v Sullivan,* 392 Mich 324; 220 NW2d 441 (1974), and find that defendant's claim that the charge was coercive and mandatory is without merit.

Affirmed.

---

[1] *Allen v United States,* 164 US 492; 17 S Ct 154; 41 L Ed 528 (1896).